IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| USHANGO OWENS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 07-365-JJF |
| | : | |
| OFFICER FOX, OFFICER KIRKLIN, | : | |
| DELEO, SGT. KURTEN, | : | |
| JOHN DOE #1 HYRCI CMS MEDICAL | : | |
| ADMINISTRATOR, LT. M/SGT. | : | |
| MORRISSEY, WILMINGTON POLICE | : | |
| OFFICER PUIT, and DR. JOHN | : | |
| DOE, | : | |
| | : | |
| Defendants. | : | |

Ushango Owens, Pro se Plaintiff, James T. Vaughn Correctional
Center, Smyrna, Delaware.

Rosamaria Tassone-DiNardo, Esquire, City of Wilmington Law
Department, Wilmington.  Attorney for Defendants John Fox,
Mackenzie Kirlin, James DeLeo, Charles Puit, Matthew Kurten, and
Michael Morrissey.

**MEMORANDUM OPINION**

March $\underline{30}$, 2010
Wilmington, Delaware

Farnan, District Judge

Plaintiff Ushango Owens ("Plaintiff"), an inmate currently incarcerated at the James T. Vaughn Correctional Center ("VCC") filed this lawsuit pursuant to 42 U.S.C. § 1983.[1]  He also raises supplemental state claims.  Plaintiff proceeds pro se and has been granted leave to proceed in forma pauperis.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.  Presently before the Court are several Motions filed by the parties.[2]  (D.I. 70, 78, 82, 88, 93.)  For the reasons discussed below, the Court will grant Defendants' Motion For Summary Judgment and will deny Plaintiff's Motions.[3]

## I.   BACKGROUND

The following facts are taken from the Complaint and other documents and exhibits submitted by the parties.  The Complaint and its amendments allege that Plaintiff was a victim of

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

[2]The majority of the Defendants were dismissed on February 21, 2008 and May 16, 2008.  (D.I. 19, 28.)  The remaining City of Wilmington Defendants are John Fox, Mackenzie Kirlin, James DeLeo, Charles Puit, Matthew Kurten, and Michael Morrissey.

[3]Plaintiff names Doe defendants, John Doe #1 HYRCI CMS Medical Administrator and Dr. John Doe.  The Doe defendants have not been identified or served pursuant to Fed. R. Civ. P. 4(m).

excessive force during his arrest on February 8, 2007.[4] He also alleges that following his transfer to the Howard R. Young Correctional Institution ("HYRCI") he received inadequate medical care. (D.I. 2, 25, 27.)

On February 8, 2007, Defendant Wilmington Police Officer Robert Fox ("Fox") was conducting surveillance of the area around Fourth and Connell Streets in the City of Wilmington via a hidden surveillance camera. (D.I. 73, A95, A97.) Fox viewed the images from the camera on a monitor located in the offices of Downtown Visions located in the 400 block of Orange Street in Wilmington, Delaware. (Id.) Fox was not physically present at Fourth and Connell Streets, but his partner, Defendant Wilmington Police Officer Mackenzie Kirlin ("Kirlin")[5] was in the area in her marked police vehicle to provide assistance to Fox in stopping

---

[4]Plaintiff alternates between the Fourth Amendment and Eighth Amendment when discussing his excessive force claims. Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment, Graham v. Connor, 490 U.S. 386 (1989), excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment, Sylvester v. City of Newark, 120 F. App'x 419, 423 (3d Cir. 2005) (not published), and excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment, Graham v. Connor, 490 U.S. at 395 n.10. The actions Plaintiff complains of occurred at the time of his arrest and, therefore, are analyzed under the Fourth Amendment to the United States Constitution.

[5]Incorrectly named by Plaintiff as Kirklin.

individuals suspected of drug activity. (D.I. 72, A27; D.I. 73, A95, A97-98.)

At approximately 1:50 p.m., Fox suspected that Plaintiff was selling drugs after he saw Plaintiff involved in two hand-to-hand drug transactions. (D.I. 72, A2.) Fox radioed for assistance from other units in the area to conduct a pedestrian stop. (D.I. 73, A98.) Fox provided a description of Plaintiff and his location. (Id.) He continued to watch Plaintiff so that he could provide additional information on Plaintiff's movements. (D.I. 72, A17-18.)

Defendants Wilmington Police Officers James DeLeo ("DeLeo") and Charles Puit ("Puit") responded to Fox's request for assistance. (D.I. 73, A92, A105.) They drove a marked police vehicle and were in dressed full uniform. (Id. at A93.) DeLeo and Puit saw Plaintiff in the 1300 block of West Fourth Street. (Id.) Puit, who was driving, stopped the vehicle a few feet from Plaintiff and he and DeLeo exited the vehicle. (Id. at A106.) Puit called out to Plaintiff. (Id. at A93, A106.) Plaintiff ran from the officers who chased him. (Id.) As he was running, Puit called in the pursuit over the radio. (Id. at A106.) Kirlin saw Plaintiff run from Puit and DeLeo and followed the foot pursuit in her car. (D.I. 72, A5, A24-25, A27.)

3

Defendant Wilmington Police Department Sergeant Matthew Kurten ("Kurten") also responded to Fox's call for assistance. (D.I. 72, A23; D.I. 73, A100.)   Kurten was in a marked police vehicle when he first saw Plaintiff running towards him, southbound, on Third Street.   (D.I. 72, A23; D.I. 73, A101.) Kurten, who was dressed in full uniform, exited his vehicle and shouted twice at Plaintiff to stop.   (D.I. 72, A5; D.I. 73, A101, A106.)   Plaintiff was twenty to thirty feet away when Kurten ordered Plaintiff to stop.   (D.I. 72, A23.)   Plaintiff states at that time, he did not hear any command to stop.   (D.I. 90, ¶ 2.) Plaintiff continued to run and Kurten deployed his Taser because he continued to flee despite the presence of police officers and refused to obey the orders to stop.   (D.I. 73, A101.)   The Taser struck Plaintiff on the front of his coat, and he was not affected by it.   (D.I. 72, A5, A24; D.I. 73, A93, A106.)   After he was tased, Plaintiff ran onto the stoop of a house and around a support column and snapped the Taser leads.   (D.I. 73, A93, A106.)   Plaintiff states that he continued to flee because he was so afraid of what was happening.   (D.I. 90, ¶ 2.)

Plaintiff continued to flee with Kurten in foot pursuit. (D.I. 72, A24.)   Puit and DeLeo also continued to pursue Plaintiff.   (D.I. 73, A92.)   As Plaintiff ran on the sidewalk in the 1200 block of West Third Street, a marked police vehicle

4

attempted to block his path and pulled onto the sidewalk approximately fifteen to twenty feet in front of Plaintiff, but Plaintiff did not stop. (D.I. 72, A27; D.I. 73, A106.) He slid across the hood of the police vehicle and continued to flee. (D.I. 73, A106.) Kurten followed Plaintiff and struck him once with his departmentally issued A.S.P.[6] baton ("baton") in the common peroneal area[7] (i.e., the right thigh). (D.I. 72, A5, A24, A27, D.I. 73, A106.) During the foot pursuit, DeLeo ordered Plaintiff to stop several times, but he did not comply. (D.I. 73, A93.)

Next, Plaintiff ran off the sidewalk into the street and into the front corner bumper of Kirlin's police vehicle and fell to the ground. (D.I. 72, A28, D.I. 73, A98.) Kirlin, who had been following the foot pursuit by car, was going five to six miles per hour. (D.I. 73, A98.) Kirlin slammed the brakes, stopped the vehicle, placed it in park, exited the vehicle, and attempted to handcuff Plaintiff. (D.I. 73, A98.) Plaintiff states that he could not comply with the officer's demand to put his hand behind his back because he had on a cast, was in pain

---

[6]ASP is the brand name of tactical batons used in law enforcement. See http://www.asp-net.com.

[7]Of or relating to the fibula or to the outer portion of the leg. The American Heritage Stedman's Medical Dictionary 619 (2d ed. 2004).

5

from the vehicular assault, and in an awkward position.  (D.I.
90, ¶ 2.)

    Kirlin was able to pull Plaintiff's right hand out from
beneath him, but the left hand remained hidden beneath his body.
(D.I. 73, A93.)  Plaintiff refused to give his left hand to the
officers.  (D.I. 72, A5.)  At that point, using his baton, Kurten
delivered two or three knee strikes to Plaintiff's left leg in
the common peroneal area in an attempt to stop Plaintiff's
resistance because he continued to actively resist arrest.  (D.I.
73, A101.)  Either during the foot pursuit or apprehension of
Plaintiff, DeLeo struck Plaintiff once in the leg with his baton.
(D.I. 73, A92.)  His police report states, "[a]s this officer and
other assisting officers were trying to place the defendant into
custody this officer struck the defendant in the left thigh with
his departmental issued expandable baton.  It should be noted
that this officer struck the defendant due to the fact that he
was not compliant to the verbal commands to place his hands
behind his back."  (D.I. 72, A6.).  The report of Defendant
Wilmington Police Department Sergeant Michael Morrissey
("Morrissey") states that DeLeo struck Plaintiff in the left
thigh area when he resisted the officers' efforts to handcuff
him.  (D.I. 72, A10.)

The officers were able to pull Plaintiff's arm out from under him and handcuff him. (D.I. 73, A93.) At the time of his arrest, Plaintiff's left hand was in a cast. (D.I. 72, A26, A28; D.I. 73, A90.) Plaintiff states that he did not resist arrest after he was seized and about to be handcuffed. (D.I. 90, ¶ 12.) According to Puit, the entire incident lasted approximately thirty seconds. (D.I. 73, A107.)

At one point when Plaintiff fell, Kurten saw him throw an object under a parked car. (D.I. 72, A2, A3, A25.) After Plaintiff was handcuffed, Kurten retrieved the object which was a bundle of ten bags of heroin bound by a rubber band. (D.I. 72, A1, A25-26.) After Plaintiff was handcuffed, Kirlin retrieved an additional twenty-six bags of heroin from Plaintiff's clenched hand. (D.I. 72, A2, A28.)

Kirlin and DeLeo transported Plaintiff to the Wilmington Hospital Emergency Room and where Plaintiff received treatment for "nonspecific" pain in his arm and leg. (D.I. 73, A90, A94, A98.) Fox, who had been at the Downtown Visions office, met Kirlin and DeLeo at the emergency room. (Id. at A96.) He did participate in the pursuit or apprehension of Plaintiff. (Id.)

According to Kirlin, she did not search Plaintiff at the hospital although she may have been in the emergency room with him. (D.I. 73, A98.) At the time, he was clothed. (Id.)

Plaintiff states that Kirlin stripped search him at the emergency
room where he "was being seen to [his] bruises and scrapes in
front of other fellow officers." (D.I. 90, ¶ 4.) Medical
records indicated that Plaintiff had a preexisting fracture to
his right first metacarpal. (D.I. 73, A90.) He was prescribed
Motrin. (Id. at A90.)

After Plaintiff was taken into custody, Kurten contacted
Morrissey to report his use of the Taser. (Id. at A103.) At the
time, Morrissey was acting lieutenant. (Id.) As required by
departmental policy, Morrissey responded to the scene of the
arrest to investigate the use of force. (Id.) He also went to
the emergency room to interview Plaintiff, but Plaintiff refused
to speak to him. (Id. at A97, A104.) After completing his
investigation, Morrissey concluded that the officers' actions
were reasonable and justified given Plaintiff's active resistance
to the officers and repeated refusals to the verbal commands to
stop, and were consistent with Wilmington Police Department
Directive 6.7 governing the use of force. (Id. at A104.)
Morrissey's investigation and conclusions were reviewed and
approved by his supervisors. (Id.)

Plaintiff was charged with 1) possession with intent to
deliver a narcotic; 2) possession of a narcotic within 1000 feet
of a school; 3) distribution, delivery or possession of a

controlled substance within 300 feet of a park, recreational area, church or synagogue; and 4) resisting arrest. (D.I. 72, A60-61; D.I. 73, A62-77.) A jury found Plaintiff guilty of all charges following his trial in the Delaware Superior Court. (Id.) Plaintiff was sentenced to a total of 10 years imprisonment, suspended after five years for one year at Level III probation. State v. Owens, ID No. 0702007817, 2009 WL 4017401 (Del. Super. Ct. Oct. 22, 2009). Plaintiff did not file a direct appeal of his conviction or sentence. Owens v. State, 962 A.2d 256 n.2 (Del. 2008) (table decision).

## II. STANDARD OF LAW

Plaintiff and Defendants both move for summary judgment. (D.I. 70, 82.) Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences from the evidence must be drawn in that parties' favor. Conopco, Inc. v. United States, 572 F.3d 162, 165 (3d

Cir. 2009). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255). The rules are no different when there are cross-motions for summary judgment. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).

Defendants move for summary judgment on the grounds that the racial profiling claim is barred as a matter of law by Heck v. Humphrey and the doctrine of collateral estoppel; Fox had no personal involvement in the § 1983 claim; Plaintiff cannot adduce evidence against Morrissey necessary to establish supervisory liability pursuant to 42 U.S.C. § 1983; Kirlin, Puit, DeLeo, and Kurten are entitled to qualified immunity for their actions during Plaintiff's arrest; and Fox, Kirlin, Puit, DeLeo, and Kurten are immune from the state tort claim for assault and battery under the Delaware County and Municipal Tort Claims Act,

10 Del. C. § 4010 et seq.[8]  (D.I. 71.)  Plaintiff moves for
summary judgment on the grounds that his public defender denied
him due process of law; Morrissey and Fox violated his right to
due process due to their failure to correct fellow officers
through administrative reprimand; Morrissey, Kurten, DeLeo, Puit,
Kirlin, and Fox used excessive force during his arrest in
violation of the Eighth Amendment; and the Delaware State Court
and Defendants lacked enforcement powers to proceed with the
criminal case against him.  (D.I. 83.)

**III.  DISCUSSION**

**A.  Racial Profiling**

    The Complaint alleges that Fox and Kirlin engaged in racial
profiling and harassment when Plaintiff was arrested on February
8, 2007.  (D.I. 2, ¶ 3.)  Defendants argue that there is no
factual support for the racial profiling allegations and,
regardless, the claim is barred by Heck v. Humphrey, 512 U.S. 477
(1994) and collateral estoppel.

    Plaintiff alleges that he was a victim of racial profiling
and harassment, and while not stated, this presumably subjected

_____

    [8]Plaintiff filed two Responses to Defendants' Motion For
Summary Judgment.  (D.I. 81, 89.)  One speaks to his criminal
conviction (D.I. 81) and is inapplicable as discussed in the
Court's May 16, 2008 Memorandum Opinion(D.I. 28), and the other
speaks to the issue of excessive force and assault and battery
(D.I. 89).

                                                        11

him to selective enforcement.  Other than a passing mention,
Plaintiff's Responses do not speak to the issue of racial
profiling.

A plaintiff cannot recover under § 1983 for alleged wrongful
incarceration unless he proves that the conviction or sentence
has been reversed on direct appeal, expunged by executive order,
declared invalid by a state tribunal authorized to make such
determination, or called into question by a federal court's
issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512
U.S. 477, 487 (1994).  The Third Circuit has stated that "[i]f a
person can demonstrate that he was subjected to selective
enforcement in violation of his Equal Protection rights, his
conviction will be invalid."  Gibson v. Superintendent of N.J.
Dep't of Law & Pub. Safety, 411 F.3d 427, 440-41 (3d Cir. 2005);
see also Cook v. Layton, 299 F. App'x 173, 174 (3d Cir. 2008)
(not published) ("[A] successful claim of racially discriminatory
enforcement of the law would invalidate the resulting conviction
and sentence.").  Plaintiff makes no showing that his conviction
had been invalidated as a result of racial profiling.  Inasmuch
as there has been no favorable termination of Plaintiff's
underlying state-court conviction, his claim of selective
enforcement is barred by Heck v. Humphrey.  For the above

12

reasons, the Court will grant Defendants' Motion For Summary
Judgment as to this claim.

## B. Personal Involvement

Defendants argue that Plaintiff cannot prevail on his
excessive force claim against Fox because he had no personal
involvement in Plaintiff's physical apprehension and arrest.
Plaintiff responds that Defendants were part of a conspiracy to
the assault and battery that occurred on North Harrison Street.
He also argues he is entitled to summary judgment on the basis
that Fox is liable under the Eighth Amendment. As previously
noted, the correct standard is analyzed under the Fourth
Amendment.

"A defendant in a civil rights action must have personal
involvement in the alleged wrongs" to be liable. Sutton v.
Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(quoting Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal
involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence." Rode, 845
F.2d at 1207.

The evidence of record indicates that Fox was not physically
present during the time Plaintiff was initially contacted by the
police, when Plaintiff fled, or was arrested. Nor is there any
evidence that Fox personally directed the other officers' use of

13

force during the pursuit.  Moreover, Plaintiff points to no
evidence in the record to support his conclusory allegations of a
conspiracy of assault and battery.  Indeed, Plaintiff has never
before raised a conspiracy issue.[9]  Plaintiff may not amend his
Complaint through his arguments in opposition to Defendants'
Motion For Summary Judgment.  See Bell v. City of Philadelphia,
275 F. App'x 157 160 (3d Cir. 2008) (not published) (citations
omitted).  There is no genuine issue of material fact.
Therefore, for the above reasons, the Court will grant
Defendants' Motion For Summary Judgment and will deny Plaintiff's
Motion For Summary Judgment as to the excessive force claim
raised against Fox.

## C.  Respondeat Superior

Plaintiff alleges that the failure of Morrissey to take
disciplinary or other action to curb known patterns of physical
abuse by Fox, Puit, DeLeo, Kurten, and Kirlin constituted
deliberate indifference, and contributed to and proximately
caused the violation of Plaintiff's constitutional rights and his
assault and battery.  (D.I. 27, ¶ 35.)  Defendants move for
summary judgment on the grounds that Morrissey's only involvement
and role in this incident was to investigate Defendants' use of

---

[9]Plaintiff also raised a strip search claim raised in his
Declaration.  (See D.I. 90, ¶ 4.)  Similar to the conspiracy
claim, it is not properly before the Court.

14

force after the incident had already occurred.  Plaintiff moves

for summary judgment on the grounds that while Morrissey and Fox

did not commit any due process violations, they become

responsible for them when they failed to correct them in the

course of the official and supervisory responsibilities.

As is well established, supervisory liability cannot be

imposed under § 1983 solely under a theory of respondeat

superior.[10]  See Ashcroft v. Iqbal, –U.S.–, 129 S.Ct. 1937

(2009); Monell v. Department of Social Services, 436 U.S. 658

(1978); Rizzo v. Goode, 423 U.S. 362 (1976).  Purpose rather than

knowledge is required to impose liability on an official charged

with violations arising from his or her superintendent

responsibilities.[11]  Iqbal, 129 S.Ct. at 1949.  "Absent vicarious

---

[10]In Iqbal, the plaintiff alleged supervisory officials
violated his rights because one official was the "principal
architect" of the policy, and another was "implemental" in
adoption and execution of the policy.  See id. at 1944.  The
Supreme Court found the allegations facially insufficient.  See
Iqbal, 129 S.Ct. at 1949 (quoting Robertson v. Sichel, 127 U.S.
507, 515-516 (1888), for the proposition that "[a] public officer
or agent is not responsible for the misfeasances or position
wrongs, or for the nonfeasances, or negligences, or omissions of
duty, of the subagents or servants or other persons properly
employed by or under him, in the discharge of his official
duties").

[11]In light of Iqbal, it is uncertain whether proof of
personal knowledge, with nothing more, provides a sufficient
basis to impose liability upon a supervisory official.  See Bayer
v. Monroe County Children and Youth Services, 577 F.3d 186, 190
n.5 (3d Cir. 2009).

liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by Plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, 128 F. App'x 240 (3d. Cir. 2005) (not published).

The evidence of record supports a finding that neither Morrissey nor Fox were personally involved in Plaintiff's arrest or the events leading up it. As to Morrissey, his involvement consisted of an investigation to determine whether the use of force at the time of Plaintiff's arrest was reasonable or justified. The record does not demonstrated that either Fox or Morrissey were aware of prior incidents or a pattern of unjustified use of force by Defendants. Indeed, there is nothing in the record that demonstrates either Morrissey or Fox the official were a "moving force [behind] the constitutional violation" or exhibited "deliberate indifference to the plight of the person deprived." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 389

16

(1989)); see also Brown v. Rinehart, 325 F. App'x 47 (3d Cir.
2009) (not published) (summary judgment appropriate where
Plaintiff refers to fact that Defendant wrote and signed off on
police reports, but cited no evidence of Defendant's personal
involvement of alleged excessive force during Plaintiff's arrest
through participation, knowledge, or acquiescence.)

For the above reasons, the Court finds that Plaintiff has
not shown a genuine issue for trial. Therefore, the Court will
grant Defendants' Motion for Summary Judgment and will deny
Plaintiff's Motion for Summary Judgment on this issue.

## D. Excessive Force

Defendants Kirlin, Puit, DeLeo, and Kurten argue that any
actions taken by them during Plaintiff's arrest were reasonable,
did not violate Plaintiff's Fourth Amendment rights, and they are
entitled to qualified immunity. Plaintiff argues that Morrissey,
Kurten, DeLeo, Puit, Kirlin, and Fox are liable for the
applicable standard of law against his Eighth Amendment right.
The Court will not address Plaintiff's claim as to Morrissey and
Fox inasmuch as it previously determined that they lack personal
involvement necessary to impose § 1983 liability.

"[C]laims that law enforcement officers have used excessive
force . . . in the course of an arrest . . . should be analyzed
under the Fourth Amendment and its 'reasonableness' standard . .

17

. ." Graham v. Connor, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397; Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004); Mosley v. Wilson, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

As to qualified immunity, the two-step test as set forth in Saucier v. Katz, 533 U.S. 194 (2001), is not mandatory, but often appropriate when analyzing qualified immunity. Pearson v. Callahan, -U.S.-,129 S.Ct. 808, 818 (2009). Under the Saucier protocol, first, the Court examines whether or not the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201

18

(2001). "If no constitutional right would have been violated
were the allegations established, there is no necessity for
further inquiries concerning qualified immunity." Id. If the
allegations amount to the violation of a constitutional right,
the court proceeds to the second inquiry and determine if the
right was "clearly established in the specific context of the
case." See Brosseau v. Haugen, 543 U.S. 194, 198 (2004);
Saucier, 533 U.S. at 202 (noting that an officer is entitled to
qualified immunity unless "it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted"). Courts now have the discretion in deciding which
of the two prongs of the qualified immunity analysis should be
addressed first in light of the circumstances in the particular
case at hand. Pearson, 129 S.Ct. at 818.

Plaintiff alleges the use of excessive physical force.
Because the determination of whether the use of force is
reasonable is a fact specific inquiry, courts have reached
different results depending upon the facts and circumstances of
each case. See Bender v. Township of Monroe, 289 F. App'x 526
(3d Cir. 2008) (not published) (genuine issues of material fact
precluded summary judgment on whether police officers retaliated
and used excessive force against an arrestee by beating him while
handcuffed, hitting him in the face with a flashlight, and

19

breaking his cheekbone, because arrestee had kicked an officer);

Davis v. Bishop, 245 F. App'x 132 (3d Cir. 2007) (not published)

(no excessive force by police officers in handcuffing and

subduing arrestee who was intoxicated, disobeyed officer's orders

to attempt to perform a field sobriety test and get off the hood

of the police car, and eventually kicked out the rear window of

the police cruiser, and although officer admitted to having flung

arrestee off the car, officers were confronted with an uncertain

situation with an individual who was uncooperative); Feldman v.

Community Coll. of Allegheny, 85 F. App'x 821 (3d Cir. 2004) (not

published) (no excessive force by police officers when arresting

college student even if, as student alleged, the officers

wrestled student to the ground and kicked him in the head, when

the student resisted arrest and actively struggled with the

officers when they attempted to remove him); Nolin v. Isbell, 207

F.3d 1253, 1255, 1257 (11th Cir. 2000) (no excessive force where

officer grabbed plaintiff from behind, threw him against a van

three or four feet away, kneed him in the back, pushed his head

into the side of the van, and searched his groin in an

uncomfortable manner); Ankele v. Hambrick, Civ. No. 02-4004, 2003

WL 21223821 (E.D. Pa. May 7, 2003), aff'd, 136 F. App'x 551 (3d

Cir. 2005) (not published) (show of force of slamming plaintiff

onto hood of patrol car reasonable given the uncertainty
presented by the arrestee's conduct).

Plaintiff also alleges excessive because of the use of a
taser. Depending upon the circumstances, the application of a
taser may be a reasonable use of force. See Zivojinovich v.
Barner, 525 F.3d 1059, 1071-73 (11th Cir. 2008) (per curiam) (use
of a taser to subdue a suspect who had repeatedly ignored police
instructions and continued to act belligerently found to be
reasonably proportionate to the need for force); Gruver v.
Borough of Carlisle, No. 4:CV 05-1206, 2006 WL 1410816 (M.D. Pa.
May 19, 2006) (no excessive force when use of taser was
consistent with level of resistance and there was no indication
police officers applied any gratuitous force); Armbruster v.
Marguccio, Civ. No. 05-344J, 2006 WL 3488969 (W.D. Pa. Dec. 4,
2006) (issue of fact whether arrestee was resisting at the time
of the first use of taser, but no excessive force for subsequent
taser use when officers reasonably believed arrestee was
resisting arrest). Courts have held that the gratuitous use of
force on a suspect who has already been subdued and placed in
handcuffs is unconstitutional. Bultema v. Benzie County, 146 F.
App'x 28, 35 (6th Cir. 2005) (not published); see also Parker v.
Gerrish, 547 F.3d 1, 8-11 (1st Cir. 2008) (upholding jury verdict
that officer used excessive force in tasing an arrestee who had

insulted the officers but also had complied with their requests and did not resist arrest); <u>Casey v. City of Fed. Heights</u>, 509 F.3d 1278, 1282-87 (10th Cir. 2007) (use of a taser and related force against a nonviolent misdemeanant who did not flee or actively resist arrest found to be excessive).

The reasonableness of defendants' conduct in their use of force is measured by "careful attention to the facts and circumstances" of this case. <u>See</u> <u>Graham</u>, 490 U.S. at 396. The facts before the Court are that Plaintiff was observed engaging in a hand-to-hand drug deal, and fled from Defendants despite the presence of several police officers, repeated commands to stop, and the application of a Taser. The record reflects that the Taser had no effect upon Plaintiff and he continued to flee after its application. While Plaintiff states that initially he did not hear a command to stop, he states that once he was tased, he continued to flee because he was afraid. It was not until Plaintiff ran into the slow moving police vehicle that Plaintiff stopped. Even then, he resisted the officers' attempts to handcuff him.

The facts and circumstances of Plaintiff's arrest, as described by Defendants, are not disputed with competent proof by Plaintiff. Even when viewing the facts in the light most favorable to Plaintiff, it is undisputed that Plaintiff ran from

22

officers and continued to flee even after he was tased. Keeping
in mind that "police officers are often forced to make split-
second judgments - in circumstances that are tense, uncertain,
and rapidly evolving - about the amount of force that is
necessary in a particular situation," the Court concludes that
the force used by Defendants was objectively reasonable to gain
control of the situation.  See Graham, 490 U.S. at 397.  A
reasonable jury could conclude that the force used was reasonable
given the conduct of Plaintiff.

For the above reasons, the Court finds that any force that
may have been applied does not rise to the level of a
constitutional violation.  Therefore, the Court will grant
Defendants' Motion For Summary Judgment and will deny Plaintiff's
Motion For Summary Judgment as to the excessive force claims.

### E.  Delaware Tort Claims Act

Plaintiff asserts a supplemental state tort claim for
assault and battery against Fox, Kirlin, DeLeo, Puit, and Kurten.
Defendants argue that governmental entities and their employees
are immune from liability pursuant to the Delaware County and
Municipal Tort Claims Act ("Tort Claims Act"), 10 Del. C. § 4010
et seq.  Plaintiff's Opposition does not address the immunity
issue.

The Tort Claims Act provides that "except as otherwise
expressly provided by statute, all governmental entities and
their employees shall be immune from suit on any and all tort
claims seeking recovery of damages." 10 Del. C. § 4011(a).  It
further provides for immunity in the performance or failure to
exercise or perform a discretionary function or duty, whether or
not the discretion be abused and whether or not the statute,
charter, ordinance, order, resolution, regulation or resolve
under which the discretionary function or duty is performed is
valid or invalid.  Id. at § 4011(b)(3).  The Tort Claims Act
provides, however, that an employee may be personally liable for
acts and omissions causing property damage, bodily injury or
death in instance in which the governmental entity is immune
under this section, but only for those acts which were not within
the scope of employment or which were performed with wanton
negligence or willful and malicious intent.  Id. at § 4011(c).

    With regard to any actions taken by Defendants in the
performance of their official functions, they are immune from
suit.  See 10 Del. C. § 4011(b)(3); Collins v. Figueira, C.A. No.
04C-06-009(RBY), 2006 WL 1817092 (Del. Super. Ct. June 23, 2006)
(Police Department immune from suit under the Tort Claims Act for
claims that it was negligence because it failed to ensure that
patrolmen complied with the department's procedures and

24

fundamental guarantees of the U.S. Constitution). Further, the evidence before the Court does not indicate that Defendants acted with wanton negligence or willful and malicious intent. Rather, the evidence is that under the circumstances, their actions were reasonable. For the above reasons, the Court will grant Defendants' Motion For Summary Judgment as to this issue.

## F.   Due Process

Plaintiff moves for summary judgment on the grounds that his public defender, Kester Crosse ("Crosse") denied him due process of law. (D.I. 83, point 1.) Crosse was dismissed as a defendant on May 16, 2008. (D.I. 28, 29.) As discussed in the Court's Memorandum Opinion, Crosse is not a state actor and therefore, Plaintiff's § 1983 claim against him fails. For the above reasons, the Court will deny Plaintiff's Motion For Summary Judgment on this issue.

## G.   State Criminal Proceedings

Plaintiff moves for summary judgment on the grounds that the Delaware State Court and Defendants lacked enforcement powers to proceed with the criminal case against him, Delaware lacks the power to enact statutes, and his arrest was illegal. Defendants respond that these claims are barred by Heck v. Humphrey and, further, they are not properly before the court, having never before been pled by Plaintiff.

The claims challenge Plaintiff's criminal conviction.
Initially, the Court notes that the claim is specious and was not
alleged in Plaintiff's Complaint or Amendment. Moreover, as
discussed above in Section III. A., there has been no favorable
termination of Plaintiff's underlying state court conviction.
Accordingly, the claims are barred by Heck v. Humphrey. For the
above reasons, the Court will deny Plaintiff's Motion For Summary
Judgment as to these issues.

## IV.  MISCELLANEOUS MOTIONS

### A.  Motion For Extension Of Time To File Response/Reply

On September 25, 2009, Plaintiff filed a Motion For
Extension Of Time to respond to Defendants' Motion For Summary
Judgment. (D.I. 78.) Plaintiff has since filed two Responses as
well as a Cross Motion For Summary Judgment. Therefore, the
requested relief is moot and the Court will deny the Motion.

### B.  Request For Counsel

Plaintiff requests counsel. (D.I. 88.) This is Plaintiff's
third request for counsel. (See D.I. 24, 67.) He requests
counsel on the grounds that the facts and issues involved in this
case are complex, he has no ability to investigate, there is
conflicting testimony, he is unskilled in the law, and the
allegations if proved would establish a constitutional violation.

Although a plaintiff does not have a constitutional or statutory right to an attorney,[12] a district court may seek legal representation by counsel for a plaintiff who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."   Tabron v. Grace, 6 F.3d 147, 154 (3d Cir. 1993)(citing Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984)).

Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf;

---

[12]See Mallard v. United States Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (§ 1915(d) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request."; Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993) (no right to counsel in a civil suit).

and (5) the degree to which the case turns on credibility determinations or expert testimony. Montgomery v. Pinchak, 294 F.3d 492, 498-99 (3d Cir. 2002); Tabron, 6 F.3d at 155-56.

After reviewing Plaintiff's Motion, the Court concludes that the case is so not factually or legally complex that an attorney to represent Plaintiff is warranted. Plaintiff's filings in this case demonstrate his ability to articulate his claims and represent himself. Finally, as discussed above, the Court will grant Defendants' Motion For Summary Judgment. Thus, in these circumstances, the Court will deny without prejudice to renew Plaintiff's Request For Counsel. (D.I. 88.)

## C. Motion For Writ Of Habeas Corpus Ad Testificandum

Plaintiff asks the Court to require Warden Perry Phelps to transport him to Court at the commencement of trial in this case, and for Defendants to bear all costs. (D.I. 93.) Defendants take no position, but object to bearing any costs associated with the implementation of a writ. (D.I. 98.)

The Motion is premature and, therefore, the Court will deny the Motion. (D.I. 93.)

## D. Show Cause

Plaintiff filed his Complaint on June 8, 2007, and amended it on March 6, 2008, to add Defendants John Doe #1 HYRCI CMS Medical Administrator and Dr. John Doe. (D.I. 2, 25.) Other Doe

28

Defendants have been dismissed, but the remaining two have not been identified or served. Therefore, Plaintiff will be ordered to show cause why the Doe Defendants should not be dismissed for Plaintiff's failure to identify them and failure to serve process within 120 days of filing the Complaint, pursuant to Fed. R. Civ. P. 4(m).

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment and will deny Plaintiff's Motions. (D.I. 70, 78, 82, 88, 93.) Plaintiff will be ordered to show cause why the remaining two Doe Defendants have not been identified or served.

An appropriate Order will be entered.